Honorable, Judges of the United States Court of Appeals for the Fourth Circuit. Mr. Polston, we're happy to hear from you. Thank you. Good morning and may it please support Mark Polston for appellant. Your Honors, in 1997 Springs Memorial Hospital provided medically necessary inpatient rehabilitation services to 227 Medicare beneficiaries. Those 227 beneficiaries represented 94% of all the patients at Springs Memorial Hospital would see that year in that rehabilitation. Those 227 patient had an average stay 23 days. That's 23 days of intensive rehabilitation physical therapy for significant illnesses and injuries provided to the Secretary's beneficiaries. The Secretary's position in this case is that he is not responsible for paying for one penny for any of the care provided to those 227 beneficiaries. Takes that position even though he is now recognizes that he is responsible for care provided to his beneficiaries in 1998 through 2000 under the same contract that rehab care entered into with Springs to provide services. Now, the Secretary doesn't take the position that the cost that Springs paid to rehab care in 1997 were somehow out of line with the cost that he paid, that Springs paid to rehab care for 98 through 2000. Can't take that position because that's not supported by the record. Nor does the Secretary take the position that the scope of the contract in 1997 somehow was different in terms of the scope of services. Can't take that position because that's not true. It's the same contract under which rehabilitation services were provided for this entire four-year period. And finally, the Secretary doesn't argue that the cost that Springs paid to rehab care in 1997 somehow were out of line or out of whack with the cost that other providers paid for the very type same services provided by rehab care. In fact, that's not what's reflected in the record and the cost that Springs incurred was within 8% of the cost of what were incurred by another hospital under a similar contract providing the same services and that hospital was Toomey. Your Honors, in this case, the Secretary's position is that he should receive all of these free services for free for his beneficiaries because of one simple fact, that Springs Memorial could not provide one piece of documentation that was requested for at the first point of time when it was requested during audit. Now, the Secretary... Can I challenge the validity of 42 CFR 14, 413.24C? This is the provision that requires that you submit information capable of being audited. Do you contend that that's an invalid regulation? Absolutely not, Your Honor. It's a valid regulation. Okay, and the Secretary concluded then for 1997, you did not submit information that was capable of being audited, right? Well, that's the Secretary's conclusions and that's... and they're, you know, our position, of course, is that they're legally invalid. Well, do you contend that they were in fact capable? But do you contend that the Secretary, you exceeded his discretion in concluding the information you gave him in 1997 was not in fact capable of being audited? Yes, Your Honor, we did for a number of reasons. First, that regulation does require all providers to maintain documentation that can be audited. That same regulation goes on to say that auditable documentation is a type of documentation that can establish the fact for which the purpose of the documentation is intended. And the documentation that was provided here, the purpose that the Secretary wanted, the payroll records that we were referring to, was to determine the amount of services that were provided in 1997. So that's the intended purpose. There are other documents that were provided in the record, excuse me, that are demonstrated in the record that will establish the very same fact. So, for example, the provider brought forward documentation regarding the Provider Statistical and Reimbursement Report, or what's called the PSNR Report. That PSNR Report is the Secretary's own documentation. The Secretary uses the PSNR Report to actually audit other hospitals' cost reports every year. Now, that PSNR documentation would have established and did establish the number of units of service of physical therapy that Springs provided through RehabCare in 1997. The reason that the Secretary insists upon the payroll records is to understand is to determine the number and the volume of units of physical therapy provided in 1997. So the District Court reached a conclusion that it was impossible for the Secretary to utilize the documentation that was provided. That's clearly an error. That's not supported by the record. The District Court's conclusion... Can I ask you about another provision? I mean, it's a striking provision. This is 42 U.S.C. 1395 D.A. Now, so basically, I just heard you explain, and I'm not an expert in this, and I just heard you explain why you think the information you gave them is good enough to let them do what they want. And I expect that your friend on the other side will get up and tell me why it was not good enough to let them do what they want. And candidly sitting here, I have no way of knowing how I'm supposed to figure out whether it was enough. But then I look at a statute that says, you know, you said, the question presented is the Secretary wants services, but he doesn't want to pay for them. But this statute says, no payment shall be made, I gather, to anyone until the provider has furnished such information the Secretary may request in order to determine. I mean, that's a pretty sweeping grant of authority to the Secretary to decide what information they deem sufficient. So why, why isn't just that, why, why are you not just right that you gave them enough information, but you're so right that their contrary determination doesn't fall within the statute, which seems to give the Secretary pretty sweeping authority to decide what he thinks is necessary. Your Honor, there are three responses to that question. The first response is that while the Secretary can demand documentation, the Secretary cannot demand irrelevant documentation. And the documentation... And we're supposed to make a de novo decision of whether something is relevant or irrelevant under the Medicare statute? Your Honor, you can interpret the law, and that's what the District Court failed to do. The law establishes that the Secretary has to pay a reasonable cost for these services. A reasonable cost has a definition. It's the costs that are actually incurred minus any sort of costs that are unnecessary in the delivery of services. And Secretary's regulation also recognizes that those costs from provider to provider may vary from time to time. It also recognizes that what the primary definition of reasonable cost is, is those costs cannot be, they're reasonable so long as they're not substantially out of line. The Secretary interpretation of that regulation, which is unquestionably applicable here, Secretary's interpretation of that regulation is set forth in his provider reimbursement manual at section 2135. The documentation requirements that he requires under the statute that you cited, 1395G, the documentation requirements that he puts springs on notice of are set forth in 2135. And the document... Let me ask you this, counsel. Why wouldn't auditable payroll data be one of the essential parts of information that the Secretary would want to find out whether the requested reimbursement was reasonable or whether it was out of line? I mean, all you offered initially were rough estimates of salary and bonuses or what have you, but that isn't any substitute for the actual records and for auditable payroll information. And the payroll data is one of the things that accountants go to first. And that shows you an awful lot of people, an awful lot, and it shows you whether they hired too many people and it shows you what they paid them. And you get to compare those figures. And I just, I don't, I mean, I'm sort of perplexed because I don't understand how the Secretary can do its job as a guardian of the public fisc under the statutory mandate that Judge Hyten's just read to you, which does, to use his words, seem to me to be sweeping. And given the way in which healthcare costs are just rocketing upward, there has to be some check on them. And if you disable the Secretary from getting auditable payroll data, doesn't that communicate to healthcare providers that they can be sloppy in the way that they're going about things? Your Honor, there are two primary responses to your question. First, again, the question here is what was the purpose for which the Secretary sought those payroll records? He did not, as your question implies, seek those records to determine how much rehab care paid to its employees. That's an irrelevant question under the reasonable cost standards. What the Secretary required those documents for is he wanted to apply what's known as the therapy cap. The Medicare statute places a cap on the amount that providers can seek reimbursement for when they purchase or contract out for those therapy services. The Secretary, that cap is applied through the cost report that a hospital completes. That cap is applied by using units of service, hourly units of service. And the Secretary, in this case, at audit, wanted payroll records in order to determine the number of units of service. Those units of service are then multiplied by an hourly rate, and he used that to determine whether or not he wanted to use that as a proxy to determine whether or not the therapy cost portion of this contract was reasonable. Remember, this is... Again, you not only have the statutory mandate to contend with, I was reading the regulation 41324C to say that you all had an obligation to provide, quote, adequate data capable of being audited. And why wouldn't the auditable payroll records fall right in the heartland of what the regulation in 41324C says that the Secretary is entitled to ask for? Your Honor, the regulation goes on to say you can auditable documentation for the purpose for which it is intended. Again, the payroll records here by the Secretary's own admission were only intended to be used to find the number of hours of units of service provided in 1997. Your Honors, that is not the only documentation that's available in the record to determine that. Springs Memorial carried its burden to bring forth auditable documentation when it brought forth the Secretary's own PSNR data. Springs Memorial carried its burden when it came forth and showed the medical records. The medical records could be utilized to determine the number of units of service. That's the only purpose, Your Honor, that the Secretary wanted to... Well, but it seems to me that this case, the purpose, you're talking about a contract that you have and the contract covers two different things. One, patient therapy services and the other are management services. And, you know, that probably brings up two different kinds of considerations, but they want to know in each of these, did you hire more people that were necessary? Did you pay them an exorbitant or an unnecessary salary? I mean, and so the fact that you're dealing with a contract for two different kinds of health services would seem to me to indicate the value in having auditable payroll data to get a precise idea of whether the government is being charged an excessive amount. Your Honor, again, in response to that question, the Secretary's own manual guidance explains exactly how to determine the reasonableness of a contract, exactly the type you're talking about. This was an all-inclusive contract. The Secretary, it provided for both management services as well as therapy services. The Secretary, in an attempt to determine the reasonableness of the contract, asked the provider to split those fees out into management fees as well as into therapy fees. That was done through the documentations in the record, the value quantification. The Secretary, again, Your Honor, this is a very important point. The Secretary was not attempting to find out whether or not Springs Memorial paid too much or rehab care paid too much. Sir, I think you made that point earlier, and I understand that point. In other words, this is what you're arguing about is what the purpose of the Secretary's questions are, right? And if they don't have the purpose that you believe the purpose for information the Secretary was looking for, that it's irrelevant. But the regulation says, no Medicare payments shall be made to any provider unless the provider has furnished such information as the Secretary may request. So it seems to me that the Secretary could request it for any purpose that he wishes. Your Honor, I see that I'm going into some of my rebuttals. Maybe if you could just answer that question. I will answer this question. Thank you. That regulation does not entitle the Secretary to ask for irrelevant documentation, and that's what the Secretary has done here. Okay, so if we should determine that it's not irrelevant, then you lose, right? Your Honor, if you determine that the Secretary needed this information and there was no other evidence, there's no other evidence in the record that would support the Secretary's purpose, then we would lose. But I submit you cannot find that on the screen. Is your position if there was another way for the Secretary to determine it, he couldn't ask for this information? That can't be the way you would agree. If he could use this information to do what he wanted to do, he's entitled to ask for it. Your Honor, if he can use that information, but there's another provision in the Medicare statute that we haven't talked about, and that's the reasonable cost provision of the statute. It's also in the regulations, and that sets forth a principle. It's known as the cross-subsidization principle. That cross-subsidization principle tells the Secretary that in applying the rules to determine reasonable costs, the Secretary cannot act in a way that would shift the cost of services to his beneficiaries onto others. That is a command from Congress. And your Honor, I'll just... All right. Thank you, Counsel. If my colleagues have any questions, I'm happy to defer to them. Otherwise, we'll just wait and hear from you on rebuttal. All right. Thank you. We're now prepared to hear from the Secretary. And, Ms. Lopez, it would be a pleasure to hear from you. May it please the Court, Carolyn Lopez, on behalf of the government. With the Court's indulgence, I think it might be helpful to take a step back to talk not just about the sweeping authority that the Secretary has, which we absolutely agree that the Secretary has, that that authority says no payment shall be made unless that documentation is furnished. But also to give a sense in this record, we do take issue, as Judge Heiden's mentioned, we might with whether or not separately this documentation was relevant. And so here we can tell why the missing 1997 payroll and salary data is critical because of what happened in 1999 and what the board said. I was going to ask you, why is this period stood out in a group of periods? Was the same information provided to you in all the periods? No, Your Honor. So 1997 is a loan and the district court recognized this as well. And of course, this was the board's explanation. 1997 stands distinct from 1998, 1999 and 2000 because in those cases, the provider actually was able to provide the payroll data. And again, as Judge Wilkinson was saying, earlier, not only is payroll data an incredibly normal accounting tool that every business has, but actually, as we discussed in our brief section 2304 of that same manual that we've been discussing today, expressly lists payroll data as the type of data that every provider has to have on hand and be ready to furnish to the Secretary. And that provision goes to what is the type of adequate documentation elicited in 413, described in 413-24C more generally. And in terms of what happened in 1999, so the secretary absolutely, sorry, the contractor and then later the board absolutely did not only look at the payroll data to figure out the volume of direct therapy services. That's something that comes up in the reply brief here. Instead, what happens in 1999, which the board discussed at JA-48-49, and that settlement decision is at JA-96-97, is what happens is when the plaintiff actually breaks apart these bundled costs, so it's both direct therapy costs and also management and administrative costs. When they break that out into this model and they provide the payroll data, the contractor was able to use that payroll data to actually determine that a portion of that 1999 cost was not reasonable. And the hospital didn't appeal that determination. And so the board says, and then the board says on appeal, on appeal, they gave him another chance to provide additional documentation. And on appeal, the hospital was able to provide similar documentation for 1998 and 2000. And the secretary says, now that we have that information, we'll remand to the Medicare contractor because now they can do that analysis to figure out. And again, this is at JA-51-52, to determine what portion of those costs are reasonable. And without, this is exactly why Congress wrote the statute that way, without that type of proper documentation, the secretary can't, especially in costs that sort of bundle a lot of different things together into one thing, the secretary can't untangle those costs and actually determine what portion is reasonable and what is not. Ms. Lopez, can I ask you what strikes me as the hardest problem for the government, which is there doesn't appear to be any dispute that this entity actually provided some services in 1997. And I get the government's point, we don't have some of the information that we need. And your point about 1999 is very astute. But what you said there is getting this information allowed us to reduce the amount they get, not eliminate it. And so I totally understand the argument this means they get less, they need to take a haircut, maybe even a very big haircut. But it does seem pretty harsh to say that because they don't have this information for 1997, an entity that conceivably provided a bunch of reimbursable services gets zipped. Could you help me with that a little bit? That is what the statute says. So the statute is section 1395 GA. Congress has weighed sort of the costs and benefits of saying without adequate documentation, one option would have been to say the secretary should sort of estimate how much is reasonable and how much is not. That's not what the statute says. What the statute says is no payment shall be made unless the documentation is provided. And there are, as we discussed in our brief, six circuits have held that that is an appropriate basis for disallowance. I think one of the most, there are two cases that I think are particularly instructive. So that's the Seventh Circuit's Davis case, which we discussed. And the Davis case actually, interestingly, also involves the provision of therapy services. And the Seventh Circuit there said there's no question that some services were actually provided. But there's also no question that they didn't, that the hospital there, which was contracting out for the therapy services, just like here, didn't actually provide the timesheets that were required by the provider manual at that point and that that was a basis for disallowance. And Davis, to go to the sort of cross-subdivision point, also says that because that's Congress's chosen enforcement mechanism, it can't simultaneously be Congress's chosen enforcement mechanism for not maintaining. But is it still, is it still open to the health care provider to submit auditable payroll data? Where is it? Has it just been lost? Is it still open to them to submit a claim for reimbursement by providing auditable payroll data? At this point, they have not in their reading or final. Could you get? Sorry, my apologies. In an effort to turn more towards you, I turned away from the microphone. To my knowledge, they haven't ever offered the payroll data. At most, they've said in the briefing that they chose to have the contractor have it and that they don't have the data. But would it be open to them if they now offered auditable payroll data to get reimbursed or to get paid? Or is there some kind of informal or formal statutory of limitations in terms of providing data? My apologies, Your Honor. I'm not prepared to answer that question because it's never been suggested that they have the payroll data. What I'll say at a very general level is that there is an importance to finality of the board's decision. They were given multiple opportunities, both before the Medicare contractor and on appeal, as I was just discussing. They were able to, on appeal, submit adequate payroll documentation for those other years. I would assume that if they had that payroll data, they would have offered it at one of those multiple junctures. But I can't get out ahead of the Secretary as to whether. So in terms of finality, I don't know if this is legally relevant, but it is something that struck me while I was. Why are we still debating reimbursements from a quarter of a century ago? I mean, is this normal? And it just struck me that we're debating whether they provided adequate documentation for services they provided a quarter century ago. Yes and no, Your Honor. As both parties discussed in their brief, Medicare has now moved primarily towards a prospective payment system. So now there are still a couple of holdouts of this reasonable cost methodology. But so it's a different way of looking things on the prospective payment system. But also just, of course, the audit started much closer to when they actually submitted the documentation. And some of the reasons that you sort of have these long runs is precisely because there's a lot of back and forth, both with the Medicare contractor saying, I don't think this is enough. I need more. Can you provide me more in giving opportunities? Of course, the board process, which did include a full board hearing, and then this litigation before the district court. I'll say that some of the other cases that I was looking at, for example, the Davis case is 10 years later. So it's not, I mean, this is a long case, but it's not sort of completely out of the norm that just that sort of precisely because there's so much process given and so many opportunities to provide the requested documentation, it sometimes kicks these out pretty far. But of course, as soon as they were being audited, they were, I mean, as we discussed, they were actually on notice from 2304 and just sort of ordinary accounting principles that they should have as payroll data. But certainly once they were being audited, they were well on notice that they should maintain that during the course of the audit. Is this a fairly frequent occurrence that firms fail to submit auditable payroll data? Is this a recurring problem? That's a great question, Your Honor. I apologize. I don't have sort of statistics. I mean, we know by the fact that six circuits have already addressed this question over the course of the years, and all those six circuits have said that failure to provide documentation is a basis for disallowance, that it is something that does happen. And it's certainly something that Congress contemplated happening in that Section 1395 GA case. So I wanted to make sure that I just, sort of, answered all of Your Honor's questions and also that I sort of wasn't leaving anything on the table in terms of things that may have gotten, in which the parties may disagree. I guess the one other thing that I'll say, and of course, I'm open to additional questions, but the one other thing I wanted to say is to just talk very briefly about how that 2135 provision works, which has to do with contracts that bundle things. So as we discussed in our brief, so first of all, that provision actually doesn't apply directly to contracts like that. That provision, as per the title, the provision applies to contracts that combine just management and administrative services, not the provision of direct care. And then second of all, even assuming that provision applies, and the Board did apply it by sort of analogy here, it absolutely does not cabin that sweeping discretion to ask for any documentation that is needed. So at 2135.3, the provision does say that under certain circumstances, when certain types of documentation is not available, the contractor has to ask for additional documentation, but of course, that doesn't prevent them from asking for additional documentation in other courses. And 2135.F specifically says that they are entitled to ask for any other documentation available, which would support the reasonableness of the fees paid. And as we've been discussing, payroll data is precisely that sort of data. And I think that that's, this reminds me that there was one other thing that I wanted to make sure to clarify, which is that it is categorically false that the Secretary said that the costs weren't substantially out of line for 1997. That's at JA-49 and Note 24. The Secretary, the Board specifically found that the 1997 costs were substantially out of line. And at Note 24, the Board explains that that was actually based on plaintiff's expert own testimony. So plaintiff's expert said, after you take out a bunch of things and adjustments that we think explain what the, why the costs are higher. So that's that Medicare mix and number of days that plaintiff's counsel is talking about, even after you're making those adjustments. So this is at JA-124 and 125. He says that starts to bring these 1997 costs more in line with the state, i.e. sort of more substantially in line. But it doesn't actually explain that, but you'd still have, I want to make sure that I'm quoting exactly, but then this open question about the salaries in 1997 would remain. And at JA-114, that same expert says, I don't have any visibility on what would cause that one-year uptick in the salary line, nor an explanation for what drove that higher. And that goes precisely to Judge Wilkinson's earlier questions about payroll. What payroll helps you do is figure out if it looks like something is sort of out of line in a particular year, it's not enough to sort of say our total costs were fine. And again, here the Secretary found total costs were not fine, but the Secretary is also entitled to pull about, pull apart bundled costs like that and figure out whether certain pieces are reasonable or not. And Congress has determined that no payment shall be made if the Secretary requests relevant data to that question and doesn't get it. If there are no further questions, we'd ask that for affirmance on the briefs. Thank you, Judge Moss, Judge Heitens. Do you all have any further questions? All right, thank you very much. You have some rebuttal time, Mr. Bolson. Thank you, Your Honors. Mr. Bolson, before you get into it, this keeps bothering me. Why don't we have the data for 97 that we have for these later years? Thank you for asking that question. It's not from any reluctance of the provider to bring that forward. It's not because they didn't attempt to try to get that information. Remember, this was a subcontract with its provider, RehabCare. It asked for the documentation from RehabCare, and RehabCare would only provide the documentation that we have, which was the payroll records for 98 through 2000. That's the contractual relationship between Springs Memorial and RehabCare ended, and they were essentially powerless at that point in time to get additional documentation. That's why they pivoted, Your Honor, to doing what they could to provide other forms of auditable documentation to the Secretary. It wasn't from reluctance. It wasn't because they didn't believe that it was irrelevant, and they just wanted to provide other information. But I'm still uncertain. Who has this information? Is it RehabCare or is it the hospital? The hospital contracted with RehabCare. Under the terms of the contract, RehabCare would have been required to provide documentation to support its services. RehabCare could have and should have kept that documentation, but RehabCare failed to provide it. Did RehabCare just lose the documentation? That information is not in the record, and I would only speculate to say that RehabCare lost the information. It wasn't available. Well, then isn't your cause of action against RehabCare? No, Your Honor, because again, the... Well, if you're not able to get reimbursement here and you claim that you could if you had the correct records, then RehabCare will not give you those records. I don't know why. With all due respect, Judge Motz, I think we... I want to return to two quickly... Two quick principles that I think respond to your question. First question is, the Secretary does have the authority you suggest to ask for documentation. Again, the Secretary should ask for documentation to support the purpose for what he is trying to look at. The purpose that he was looking at here, again, was to determine the hours of service. The 1999 settlement that my opposing counsel referenced shows you exactly how the Secretary used payroll records. He used it to determine the volume of therapy services. He plugged that number into his cap for therapy services, and he determined that in that year, all of the therapy services fees and the component of the contract attributable therapy services was reasonable. Going back to the point that Judge Heitens raised about the cross-socialization principle, at a minimum, that requires a Secretary here to go through the same exercise. Because if the Secretary doesn't look at the documentation that was provided that would show the number of units of therapy do exactly what he did and satisfy himself as to the reasonableness in 1999, then the Secretary is willfully ignoring the command of Congress to not shift those costs that he can and could determine the reasonableness of to other payers. Mr. Lopez, excuse me, counsel. Ms. Lopez suggests that adopting your position would put us into conflict with six other circuits. Isn't this an area where, if she's correct, isn't this an area where a certain amount of uniformity, it's a national program, and there are health providers all over the country, why would we be an outlier in this whole area? Our position is not inconsistent with those six decisions. In fact, it's consistent with those six decisions. Those decisions certainly stand for the proposition the Secretary has the right to request documentation. None of those decisions say that the Secretary can request documentation that is not relevant to the inquiry. That's the payroll records, while the Secretary used them in one method to determine reasonable costs, he has other documentation. The last point I would like to make, Your Honors, and we barely touched upon this, is Section 2135. Section 2135 of payroll records were relevant to the inquiry determining the reasonableness of this contract under Section 2135. They would be listed in that documentation requirement. But if you go through the documentation requirements of 2135, you'll see no reference to payroll records. And, Your Honors, the reason for that is that a contract like this, an all-inclusive contract, again, under the principles of 2135, to determine whether or not they're reasonable, you look to see whether or not the costs of that contract are in line with the costs of other contracts that are, if they've been competitively bid, or other indicia of reasonableness. The evidence in the record is... Thank you. Thank you very much. Wilkinson, can I ask one question? No, absolutely. You sure can. You don't have to talk so fast. Somebody as feeble as I can then hear it. So, I take your position to be that even though it says no Medicare payments shall be made to any provider unless the provider has furnished such information as the Secretary may request, is not an ironclad rule. And if you, what you have to do is to look at the purpose for which the Secretary is requesting the information. And if you give the Secretary information that serves the same purpose, then you have not violated that provision of the statute. Is that correct? That is correct. Secretary has... So, where do we find that purpose amendment to this, if you will? Well, Your Honor, I think we've cited some cases in our brief... It's not in the statute then? Well, it's an interpretation. There's no statutory language that says that. Well, Your Honor, the regulation goes on to say, the regulation and, excuse me, the language in the regulation does go on to say that the Secretary can request auditable documentation. That is intended, that proves, I'm kind of stumbling on the language, but basically, that it's designed to prove the purposes for which it's intended. That is the irrelevancy doctrine. Well, I didn't know that you made the argument, so please do tell me that, that this information would not satisfy the Secretary, the Secretary's concern. I thought your argument was, there's other information, information we provided, that satisfied the Secretary's concern. If I may, I understand that. You've run out of time. Talk quickly. Our first argument is that all of this documentation is irrelevant, because the reasonableness of an all-inclusive contract for management services, which, contrary to what my opposing counsel says, can also include therapy services, it says it right there in the manual. The reasonableness of that is determined under very different principles. First, you look to determine whether or not it's competitive. You don't want to answer my direct question. No, I'm sorry, Your Honor, I felt that, I believe I did. Okay, thank you.
judges: J. Harvie Wilkinson III, Toby J. Heytens, Diana Gribbon Motz